

# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICKY YOUNG (#841298), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07 C 1193 |
| ) | |
| THOMAS MONAHAN, et al., ) | Judge John W. Darrah |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ricky Young, is currently detained under Illinois' Sexually Violent Person Act ("SVPA") at the Rushville Treatment and Detention Facility. From 2000 to 2006, Plaintiff was detained at the Joliet Treatment and Detention Facility ("Joliet Facility"). In 2007, he filed this civil rights action against health care professionals and employees at the Joliet Facility: Thomas Monahan, Darrell Sanders, Shan Jumper, Lea Chankin, Tarry Williams, Judy Roth, Liberty Health Care Corporation, Tony Humphrey, Steven Strock, Scott Maieritsch, Mark A. Brenzinger, Moore, and Franzen. The Defendants have filed motions to dismiss the complaint for failure to state a claim upon which relief may be granted. Roth, Jumper, Chankin, and Liberty Health Care ("Liberty Health Care Defendants") filed a motion to dismiss; Williams and Sanders filed a separate motion; Franzen, Humphrey, Monahan, Moore, and Strock join in the motions filed by the Liberty Health Care Defendants and Williams and Sanders; and Maieritsch and Brenzinger join in the motion to dismiss filed by the Liberty Health Care Defendants. Plaintiff has filed two responses. For the following reasons, the motions to dismiss are granted in part and denied in part. Plaintiff's claims of co-mingling of SVPA detainees with committed persons, overcrowding, and the lack of vocational and educational programs are dismissed. Plaintiff may proceed with his claims of: (1) being forced to share a cell with D.M. and (2) Equal Protection violations.

## STANDARD OF REVIEW ON A MOTION TO DISMISS

A motion to dismiss the complaint for failure to state a claim upon which relief may be granted involves two considerations. First, under the notice pleading requirement, this Court must determine whether the Complaint sufficiently provides the Defendants with "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1964 (2007) (*Bell Atlantic*). Federal rules follow a notice pleading, as opposed to a fact pleading, requirement. The pleading of extensive specific facts is not required, and the complaint need only state a legal claim and provide "some indication ... of time and place." *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004); *see also Bell Atlantic*, 127 S. Ct. at 1964-65. Second, the complaint's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (*citing Bell Atlantic*, 127 S.Ct. at 1965, 1973).

This Court liberally construes a *pro se* complaint. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). When considering a motion to dismiss, this Court takes the allegations in the Complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in a light most favorable to the Plaintiff. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). So long as a well-pleaded complaint sufficiently states a valid claim, even if the likelihood of recovery is very remote, a motion to dismiss the complaint must be denied. *Bell Atlantic Corp.*, 127 S. Ct. at 1965. However, the factual allegations must be sufficient to raise a right to relief above the speculation level.

This Court is not bound to accept as true legal conclusions couched as factual allegations or presume facts not alleged. *Id.* at 1964-65. Furthermore, if a plaintiff pleads facts that demonstrate that he has no claim, he may plead himself out of court. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

## FACTS

Plaintiff is a civilly detained or committed person under Illinois' SVPA. He states that he was detained at the Joliet Facility from December 2000 to July 2006, when he was transferred to the Rushville Treatment and Detention Center. Plaintiff alleges that, while at the Joliet Facility: he was housed in general population with persons committed for mental disorders, the facility was overcrowded, and there were no vocational or educational programs. Plaintiff also alleges that, in January 2006, Defendants Williams, Humphrey, and Franzen forced Plaintiff to share a cell with detainee D.M.; Plaintiff had "issues" with D.M.; and Plaintiff discussed his problem about sharing a cell with D.M. with Roth, Brenzinger, Moore, Maieritsch, and Strock. Plaintiff states that these Defendants were aware that Plaintiff had fears of being sexually assaulted by D.M. Plaintiff alleges that Defendants Sanders, Chankin, Jumper, Moore, and Monahan, and possibly Strock, were members of the moving committee and refused Plaintiff's requests to change cells. Plaintiff also alleges that, as an African-American detainee, he was treated differently from non-African-American detainees and that he was unable to choose his cellmate, while other detainees could choose their cellmates.

A liberal construction of Plaintiff's narrative of factual allegations indicates that he is raising the following claims: the Joliet Facility should have kept detainees separate from committed persons; the facility was overcrowded and did not provide sufficient vocational and educational programs; the Defendants acted with deliberate indifference by forcing Plaintiff to share a cell with D.M.; and the Defendants racially discriminated against Plaintiff, as an African-American.

## ANALYSIS

### *Co-mingling of SVP Detainees with Other Committed Persons, Overcrowding, and Lack of Vocational Programs*

Plaintiff's Complaint and responses to the motions to dismiss reveal that his allegations of co-mingling of detainees and committed persons, overcrowding, and the lack of adequate vocational and educational programs do not sufficiently state claims upon which relief may be granted.[1] For the following reasons, these claims are dismissed.

### Co-mingling

In both Plaintiff's complaint and his responses to the motions to dismiss, Plaintiff asserts that he was "placed in the population at the [Joliet Facility] with committed and un-committed people, people who are called resident, and have been adjudicated by the courts as being people who suffer a mental disorder." (Plaintiff's Complaint, Docket Entry ("DE") p.5) (Plaintiff's Responses, DE 35, p.3 and DE 59 at 2). Liberally construed, Plaintiff's claim appears to argue either that the Joliet Facility improperly housed him, as a SVPA detainee prior to an adjudication of commitment, with persons already committed or that, as a person committed under the SVPA, the Joliet Facility improperly housed

---

[1] In addition to arguing that Plaintiff's allegations of co-mingling, overcrowding, and lack of vocational and educational programs do not sufficiently state a claim, the Liberty Health Care Defendants argue that these claims are time-barred because Plaintiff did not raise them within two years of his transfer to the Joliet Facility. Although Plaintiff's responses to the motions to dismiss suggest that these conditions existed at the time he arrived at the Joliet Facility in December 2000 and although Plaintiff does not respond to the argument that these claims are untimely, the Court cannot dismiss the Complaint as time-barred based on the current record. Plaintiff's Complaint is vague as to the time frame of these claims. Also, though a two-year limitations period applies to these claims, *see Kalimara v. Ill. Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir.1989); *Fairley v. Andrews*, 300 F. Supp.2d 660, 670 (N.D .Ill. 2004), Plaintiff may be complaining of a continuing violation that still existed within two years of the filing of this action, such that his claims may be considered timely. *Heard v. Sheahan*, 253 F.3d 316, 319-20 (7th Cir. 2001); *see also Savory v. Lyons*, 469 F.3d 667, 773 (7th Cir 2006). This Court, therefore, cannot determine the time-bar issue based upon the current record. Nevertheless, Plaintiff's pleadings reveal that he has not stated § 1983 claims with respect to his allegations of co-mingling, overcrowding, and the lack of vocational and educational programs.

him with detainees. Plaintiff may also be arguing that persons committed under the SVPA are supposed to be kept separate from other committed persons. None of these allegations, however, state a valid § 1983 claim for relief. Plaintiff does not allege any injury due to the co-mingling. Nor does he cite to a constitutional or federal requirement – and there appears to be none – that detainees and committed persons must be housed separately. Although an Illinois administrative provision provides that, "to the extent possible considering operational, programmatic and security needs, detained persons shall be kept separate from committed persons," 59 IL ADC 299.200, "[t]he federal government is not the enforcer of state laws." *Pasiewicz v. Lake Co. Forest Pres. Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Furthermore, this administrative provision does not mandate separation of detainees from committed persons but, rather, requires only that such separation shall be maintained to the extent possible.

Like a pretrial detainee, persons detained or committed under the SVPA may not be subjected to conditions that amount to "punishment" without due process. *See McGee v. Monahan*, 2007 WL 2728756, *3 (N.D.Ill. 2007) (*McGee*)(citing *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir.2004)). "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982) (*Youngberg*). The Constitution requires the Defendants to house Plaintiff under "humane conditions" and to provide him with "adequate food, clothing, shelter, and medical care." *McGee*, 2007 WL 2728756, *5; *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). However, Plaintiff's simple assertion that detainees were housed with committed persons, without more, is insufficient to state an actionable federal claim with respect to the conditions of his confinement. Plaintiff has not stated a claim for § 1983 relief, and this Court will not presume the existence of facts to render this claim sufficient. *See Bell Atlantic Corp.*, 127 S.Ct. at 1965 (a complaint must state more than simply conclusions that create the suspicion of a valid claim). Accordingly, the Court dismisses this claim.

### Overcrowding

With respect to Plaintiff's claim of overcrowding, he again states no injury. Rather, his Complaint and one of his responses to the motions to dismiss allege simply that "he was forced to live in overcrowded conditions." (Complaint, DE 1, p.6); (Plaintiff's Responses, DE 35, p.3). Like pretrial detainees, SVPA detainees cannot be subjected to conditions that amount to punishment and must be provided adequate food, shelter, clothing, and medical attention. *See McGee*, 2007 WL 2728756, *3; *see also Youngberg*, 457 U.S. at 321-22. However, overcrowding, itself, is not a constitutional violation unless it leads to other conditions that amount to the deprivation of a humane living situation, such as the deprivations of essential food, medical care, sanitation, or the increase in violence. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Here, even after filing a response to the motions to dismiss, it is apparent that Plaintiff is arguing simply that the Joliet Facility was overcrowded and not that such a condition led to the deprivation of other essential needs that culminated in the denial of a humane living condition. Accordingly, the Court dismisses this claim for failure to state a ground upon which relief may be granted.

### Lack of Vocational and Educational Programs

Plaintiff alleges in his complaint and in one of his responses to the motions to dismiss that "there are no meaningful Vocational or Educational Programs for Plaintiff and other pre-trial and committed detained person[s], [and] that Defendant(s) Liberty Health Care Corporation agents are now in direct contempt of court." (Complaint, DE 1, p. 3), (Plaintiff's Response, DE 35, p.3). He states that the lack of such programs violates a consent order entered by Liberty Health Care in *Hargett v. Adams*, No. 02 C 1456, 2005 WL 399300 (N.D. Ill. Jan.14, 2005) (*Hargett*). Plaintiff does not repeat this argument in his response to the motion to dismiss filed by Franzen, Moore, Monahan, and Strock.

First, "[t]here is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment." *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir.1982); *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000); *Williams v. McGinnis*, 755 F. Supp. 230, 231 (N.D. Ill. 1991). Second, contrary to Plaintiff's contention, the decision in *Hargett* does not support his argument but, rather, defeats it. In *Hargett*, Judge Leinenweber addressed a sweeping class action suit brought by the American Civil Liberties Union relating to the treatment of sexually violent committed persons. Judge Leinenweber found that the claims alleging the lack of vocational and educational training "had thin-if-any evidentiary support at trial. Plaintiffs certainly did not establish that the [Joliet Treatment and Detention Facility]'s practices in these areas amounted to constitutional violations." *Hargett*, No. 02 C 1456, 2005 WL 399300, *20. In this case, Plaintiff's general allegation that vocational and educational programs are lacking not only presents a non-constitutional claim but also presents a claim previously litigated before this Court and found to be without merit. This claim is, thus, dismissed for failure to state a claim.

In addition to the reasons stated above, this Court notes that Plaintiff's Complaint and responses to the motions to dismiss do not appear to present his claims of co-mingling, overcrowding, and the lack of vocational and educational programs as grounds for relief. Viewing these assertions in the context of Plaintiff's pleadings and other claims (discussed below), it appears that Plaintiff had only general complaints about these conditions at the Joliet Facility but does not seek relief based on these grounds. Plaintiff provides details for his claims that he was forced to share a cell with D.M. and that African-American detainees are treated differently from other detainees; however, his assertions of co-mingling, overcrowding, and lack of vocational and educational programs present only bare-bone allegations that

such conditions existed. Even after filing responses to motions to dismiss, Plaintiff has presented little-to-no information about these claims, does not allege an injury with these conditions, and has not stated allegations demonstrating a "right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965. Accordingly, in addition to the reasons stated above, these claims are dismissed.

*Forcing Plaintiff to Share A Cell with D.M.*

Plaintiff alleges that Defendants Humphrey, Williams, and Franzen forced Plaintiff to share a cell with D.M. by moving all of Plaintiff's personal property to D.M.'s cell. Plaintiff states that he had "issues" with D.M.; that Plaintiff discussed this problem with Defendants Moore, Strock, Maieritsch, Roth and Brenzinger; that Defendants Sanders, Chankin, Jumper, Moore, Monahan and possibly Strock were members of the moving committee and refused requests to move Plaintiff; that Strock, Moore, Maieritsch, Roth and Brenzinger were informed that Plaintiff was assaulted by D.M., but they failed to intervene; and that the Defendants acted with deliberate indifference when they refused to take Plaintiff seriously about being possibly sexually or physically assaulted by D.M.

As a civil detainee, Plaintiff's claim of deliberate indifference to his safety falls within the Fourteenth Amendment's Due Process Clause, as opposed to the Eighth Amendment's protection against cruel and unusual punishment. However, due process rights are at least as strong as the protections afforded convicted prisoners, and courts often use the similar standards discussed in Eighth Amendment jurisprudence. *Fisher v. Lovejoy*, 414 F.3d 659, 661-62 (7th Cir. 2005).

Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates," in particular, to protect inmates from violence from other inmates. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (*quoting Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To state a failure-to-protect claim, Plaintiff "must allege that (1) he is incarcerated under conditions posing a substantial risk of serious harm" and (2) defendant-officials acted with "deliberate

indifference' to that risk." *Brown v. Budz*, 398 F.3d at 909 (*quoting Farmer v. Brennan*, 511 U.S. at 834). To satisfy the first prong, a plaintiff must allege not only that he experienced a serious harm but also that there was a substantial risk beforehand that serious harm might actually occur. *Brown*, 398 F.3d at 910. To satisfy the second prong, a plaintiff must show that the defendant actually knew of but disregarded the risk. The defendant must have acted with "the equivalent of criminal recklessness." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007).

In this case, Plaintiff's allegations sufficiently state that the individual Defendants knew of a serious risk of harm. Plaintiff's Complaint, responses to the motions to dismiss, and grievances attached to the responses state that Defendants Franzen, Humphrey, and Williams forced Plaintiff to share a cell with D.M.; that Plaintiff discussed his problem with sharing a cell with D.M. with Defendants Moore, Strock, Maieritsch, Roth, and Brenzinger; that Defendants Sanders, Chankin, Jumper, Moore, Strock, and Monahan were members of the moving committee; and that Defendants Monahan, Sanders, Jumper, Williams, Humphrey and Chankin improperly moved Plaintiff into a cell with someone who previously threatened his safety and life. Plaintiff may be able to establish that the Defendants were aware of a serious risk of harm and disregarded that risk. *Brown v. Budz*, 398 F.3d at 911, 914-15.

With respect to whether Plaintiff suffered an actual injury, his pleadings are sketchy, at best. The Seventh Circuit has indicated that simply the threat of injury is insufficient to sustain a § 1983 claim for damages. *See Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996); *Doe v. Welborn*, 110 F.3d 520, 523 (7th Cir. 1997); 42 U.S.C. § 1997e; *but see Calhoun v. DeTella*, 319 F.3d 936, 940-41 (7th Cir. 2003) (failure to allege a physical injury, though barring recovery on a claim for damages based upon an injury, may not require dismissal of a § 1983 suit and may allow recovery for punitive damages). A review of the Complaint, as well as Plaintiff's responses to the motion to dismiss and accompanying attachments, reveals only one statement indicating that Plaintiff may have suffered an

actual injury. He states that he "was given fa[l]se information about his safety and his concerns of being sexually assaulted and physically assaulted." [Complaint, p. 8]. Although a more developed record may show that Plaintiff suffered no injury, thus possibly barring his recovery of compensatory damages for this claim, liberally construed, his current pleadings sufficiently allege both that Defendants acted with deliberate indifference to Plaintiff's safety, as well as an injury. He may thus proceed with this claim.

### *Equal Protection*

Plaintiff alleges that he and other African-American detainees are treated differently from non-African-American detainees. He alleges that: he was discouraged from filing a grievance; he was not allowed to choose his cellmate; non-African-American detainees are able to choose their cellmates; and African-American detainees are considered more aggressive than other detainees. With his responses to the motions to dismiss, Plaintiff includes affidavits and statements from other detainees, asserting that African-American detainees are treated differently from other detainees.

"To establish a *prima facie* case of discrimination under the equal protection clause, [Plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir.1993). Plaintiff's allegations that he is treated differently than non-African-American detainees sufficiently state a claim of Equal Protection violations. Plaintiff may proceed with these claims, and Defendants' motions to dismiss this claim are denied.

### CONCLUSION

For the foregoing reasons, Plaintiff's assertions of co-mingling of SVPA detainees and committed persons, overcrowding, and the lack of vocational and educational training programs fail to sufficiently state claims upon which relief may be granted. Accordingly, the Court dismisses these

claims. Plaintiff's allegations about being forced to share a cell with D.M. and that he is treated differently from non-African-American detainees sufficiently state claims for relief. Plaintiff may, thus, proceed with these claims. The Defendants are given 30 days from the date of this order to file an Answer or other response to the Complaint with respect to the claims: (1) Defendants acted with deliberate indifference to Plaintiff's safety by forcing him to share a cell with D.M.; and (2) Plaintiff, as an African-American detainee, was treated different from other detainees.

ENTERED:

JOHN W. DARRAH
United States District Court Judge

DATE: 1-16-08